UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO. 3:25-CR-30 (SVN) |
| JAMES SCHWAB | : | May 22, 2025 |

## DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO REVOKE ORDER SETTING CONDITIONS OF RELEASE

The defendant, James Schwab, through counsel, opposes the Government's Motion to Revoke Order Setting Conditions of Release dated May 14, 2025 (ECF No. 48). After extensive hearings, thoughtful inquiries, and a thorough vetting of Mr. Schwab's proposed bond package and the proposed third-party custodians, Magistrate Judge Vatti determined that the conditions proposed reasonably secured Mr. Schwab's appearance in court and the safety of the community. Based on the arguments below and those advanced at the hearing scheduled for May 28, 2025, Mr. Schwab respectfully moves this Court to deny the Government's motion and permit Mr. Schwab to be released under the conditions articulated in Judge Vatti's decision granting release. See ECF No. 49.

## RELEVANT PROCEDURAL HISTORY

In its motion, the Government has articulated the procedural history of this case.[1] Some additional facts are pertinent to this Court's analysis.

_____

[1] Counsel acknowledges that the Government has some leeway in the evidence advanced at a detention hearing, but it is important to note that evidence of many of the allegations advanced by the Government—particularly as it concerns his teenage years or a text exchange relative to an

On May 7, 2025, the parties appeared before Magistrate Judge Vatti on Mr. Schwab's motion for release from custody. In his motion and at the hearing, Mr. Schwab articulated a comprehensive bond package that included the following:

- Release to the residence of family members in Georgia where he will participate in a location restriction program (either home incarceration or home detention);

- Mr. Schwab's family members, who have been identified to the United States Probation Office and the Government, will act as third-party custodians;

- Mr. Schwab will sign a personal recognizance bond co-signed by his third-party custodians. The bond will be secured by the personal residence of his custodians, which is unencumbered and valued at approximately $850,000;

- Mr. Schwab's passport was seized at the time of his arrest. He will not actively attempt to obtain a passport or other international travel documentation;

- Mr. Schwab will avoid all contact, directly or indirectly, with any person known to him to be a victim or witness in this investigation or prosecution, as well as any co-defendants listed in the indictments for any related case;

- Mr. Schwab will agree to limitations on his access to the internet and electronic devices, including the installation of monitoring software on any electronic device, including but not limited to cell phones, iPads, or computers. He would cover the full cost of the monitoring software;

- Mr. Schwab's travel will be restricted to the District of Connecticut and the Northern District of Georgia.

After Judge Vatti indicated that additional security was warranted, Mr. Schwab's parents offered their second home and a sum of cash as additional security for the bond. Transcript of Bond Hearing, 5/13/25 at 4.

---

incident in New York—have not yet been provided in discovery. Accordingly, the defense is hampered in its ability to respond to several of these allegations on their merits. Mr. Schwab submits that this highlights why courts routinely acknowledge that it is not their role at this stage of the proceedings to assess his guilt or innocence. *United States v. Jones*, 566 F.Supp.2d 288, 292 (S.D.N.Y.2008) ("the Court's function in examining the weight of the evidence is not to determine guilt or innocence.").

Over the course of two days, Judge Vatti heard from both parties through several hours of argument. The Government advanced the same arguments raised in the motion seeking to revoke the bond, and Judge Vatti carefully weighed those assertions in his analysis. He canvased Mr. Schwab's proposed custodians and sureties at length, and was satisfied that they were acutely aware of the scope of the allegations against Mr. Schwab, their obligations as third-party custodians, and their understanding that their homes could be forfeited to the United States Attorney's Office if Mr. Schwab failed to appear in Court as required *or*, more critically, if he violated any federal, state, or local law. It is unusual for the Court to condition the bond on compliance with the conditions of release, yet Judge Vatti deemed it appropriate in this case, and the defense did not object.

At the conclusion of the hearing, Judge Vatti granted the motion for release and imposed as stringent conditions as are available to the Court. In particular, he ordered as follows:[2]

> **Order Setting Conditions of Release and Staying Release Order**. The government has moved for the detention of the defendant pending trial under both 18 U.S.C. Sections 3142(f)(1) and (f)(2). After consideration of the factors set forth in 18 U.S.C. Section 3142(g), and for the reasons set forth in detail on the record at a detention hearing that was commenced May 7, 2025 and completed on May 13, 2025, the Court concludes that the defendant has put forth an exceptionally strong bond package that has rebutted the presumption of detention applicable to the crime charged in the indictment. The Court further concludes that, while the government has demonstrated that the defendant poses a risk of flight by a preponderance of the evidence and that the defendant poses a danger to the safety of other persons or the community by clear and convincing evidence, the Court also finds that that government has failed to sustain its burden of showing that there are no conditions or combination of conditions which would reasonably assure his appearance or the safety of the community. Indeed, the Court concludes that the stringent conditions of release imposed sufficiently mitigate these risks and reasonably assure both the defendant's appearance in court as required and the safety of the community.
>
> In summary, the Court acknowledges that the charged offense is serious and carries a maximum penalty of life imprisonment. This Court is also very familiar with the basis for this charge having reviewed multiple applications for search warrants and

---

[2] The complete order is cited herein for ease of reference.

other process during the investigation that led to this charge. In short, defendant is alleged to have orchestrated a kidnapping committed by confederates in Connecticut for financial gain. In the Court's view, the evidence against the defendant is strong and he faces significant sentencing exposure if convicted. Nonetheless, this Court's role at this stage of the proceedings is not to convict the defendant and impose punishment and there are additional factors that must inform the Court's decision. Defendant is 22 years old, a U.S. citizen, and has lived in Georgia for most of his life, except for the past two years when he lived in various rentals in Florida, Nevada, and California. His parents and two of his siblings also live in Georgia. His prior criminal record is minimal, consisting of a single misdemeanor in 2023 for disorderly conduct for which he paid a fine. He has a high school diploma, completed one semester of college, and claims that he is self-employed in marketing and cryptocurrency trading. The government proffers that there is no verifiable evidence of any such employment, that the defendant is part of an underground group of computer hackers/social engineering scammers and that he profits substantially through fraudulent schemes, including theft of cryptocurrency and airline reward miles, check fraud, SIM swapping, and identity theft. The government further proffers that defendant has sophisticated computer skills, is technologically and internet savvy, has traveled internationally to many countries in the recent past and makes extensive use of aliases and false identifications. While the government's proffer was extensive, the Court notes that defendant has not been charged with any such fraud, identity theft or cyber offenses and the proffer was understandably light on specific details as the government acknowledges its investigation is on-going. That having been said, the Court is aware that in executing the scheme that forms the basis of the indictment, the defendant is alleged to have engaged in airline reward miles fraud, allegedly utilized an encrypted iCloud account and attempted to conceal his involvement. Defendant also appears to have access to large amounts of money which belies his 22 years of age, and his financial picture is certainly lacking in clarity. Lastly, the Court is aware that the government has evidence that the defendant did make use of false identifications in executing the alleged kidnapping scheme. Given the unclear financial picture, the defendant's computer and internet sophistication, ability to use false identifications, and his resources and ability to engage in international travel, the Court concludes that defendant poses a serious risk of flight and a danger to the community.

However, the Court can impose conditions that sufficiently mitigate the risk of flight and any danger to the community. Defendant proposes to live with his parents in Georgia, who own two homes in that state with significant equity. Defendant's mother is retired, and his father, who has now decided to postpone retirement in part due to his son's situation, works remotely from home. Both will be present in the home throughout the day and will be available to provide close supervision of the defendant. Coupled initially with home incarceration enforced through location monitoring and restriction of access to internet capable devices, the defendant's whereabouts and behavior will be carefully monitored. While the government repeatedly emphasized defendant's travel to various foreign countries and that he has various contacts established through social media in those country, the record is

4

devoid of any evidence that defendant has a support structure in any of those countries which would support flight. Further, defendant's passport is in FBI possession.

Here, the Court canvassed both parents and finds them to be strong, reliable, and suitable custodians. They understand and accept the financial risk they have agreed to undertake. There is no evidence in the record that they were aware of the defendant's conduct, benefitted from it in any way or enabled that conduct. It is clear they care deeply for their son and understand the gravity of the charge he faces, and the importance of his compliance with his release conditions. Not only do they have the requisite moral suasion as sureties and custodians to ensure compliance, but the conditions imposed financially incentivize them to do so. They intend to co-sign a $1,500,000 appearance bond secured by their two properties in Georgia, the total equity being equivalent to the amount of the bond. While they may have been unaware what the defendant was doing over the past two years, their eyes are clearly open now given what they heard in multiple hearings from the government and they well aware that their financial future in large part depends on ensuring that their son not only appears in court when required and that he does not commit any federal, state or local crime while on release. If defendant fails in either respect, the bond shall be forfeited, and his parents will lose their homes. The defendant's parents understand those potential consequences and the defendant, too, is aware of the financial peril to which his parents are subject. As the Court has noted, there is some uncertainty as to the scope of defendant's assets. Defendant has proposed to submit a CJA Form 23 financial affidavit to allay any such concern, and the Court will incorporate that into the conditions of release. While the government has argued at the hearing that defendant will simply disappear and be able to make his parents whole on the forfeited bond/collateral with the assets the government believes are at his disposal, which would require his parents to be complicit, there is no concrete evidence in the record before this Court that such a possibility is anything other than purely theoretical. As the Court observed at the hearing, it has crafted the most stringent conditions to address the myriad concerns this specific matter presents, and the Court remains mindful that the applicable standard is to reasonably assure appearance and community safety, not guarantee such in the face of any speculative possibility.

Accordingly, the Court finds that the conditions of release set forth in the attached Order Setting Conditions of Release, which is redacted with respect to the specific addresses of the Georgia properties, will reasonably assure the appearance of the defendant in court in Connecticut and the safety of the community. At the government's request, the Court exercises its discretion and STAYS the Order and execution of the bond papers pending the Government's determination of whether it wishes to appeal this ruling to the presiding District Judge. The Court has done so solely because defendant needs additional time to prepare/perfect the real estate bonds and submit a financial affidavit, and the additional time required may permit

the District Judge to expeditiously hear an appeal if the government elects that route.[3] The imposition of a stay does not reflect any belief by the Court that the government has a likelihood of success on the merits of appeal.

Order dated May 14, 2025, ECF No. 49.  On May 14, 2025, the Government filed a Motion to Revoke Order Setting Conditions of Release ("Gov't Motion"), ECF No. 48.

## ARGUMENT

### I.    STANDARD FOR RELEASE OR DETENTION

The Bail Reform Act governs pretrial detention. 18 U.S.C. §§ 3141 *et seq*. The general rule is that the Court "shall order the pretrial release of" a defendant unless the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(b). Even when there is a risk of flight, the law requires pretrial release "subject to the least restrictive further condition, or combination of conditions, that [the Court] determines will reasonably assure the appearance of the person as required...".  18 U.S.C. §3142(b). Mr. Schwab is entitled to the presumption of innocence, *see* 18 U.S.C. § 3142(j), and the government bears the burden of proving that there is "no condition or combination of conditions" that will "reasonably assure" the Court that Mr. Schwab will appear in Court following his release. 18 U.S.C. §3142(c).  Pretrial detention is the exception, not the rule, and should be reserved for "extreme cases." *United States v. Berrios-Berrios*,

---

[3] Although Judge Vatti's order has been stayed, Mr. Schwab has executed the CJA 23 financial affidavit, which is being filed under seal contemporaneous with this filing for the Court's consideration. Counsel further notes that the relevant paperwork to secure the bond has now been complete and may be executed in short order if the Court denies the Government's motion and grants Mr. Schwab the opportunity for release.

791 F.2d 246, 250 (2d Cir. 1986). *See also United States v Madoff*, 586 F. Supp.2d 240, 247 (S.D.N.Y. 2009) ("[I]t is only a limited group of offenders who should be denied bail pending trial.").

The Government asks this Court to review *de novo* Magistrate Judge Vatti's ruling that the proposed bond package would adequately assure his appearance in court and the safety of the community.  In order to prevail on its motion, the Government must prevail on its dual burden.  First, the Government must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight or, by clear and convincing evidence, that the defendant will endanger the safety of any other person or the community.  *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988.  Detention based on allegations of dangerousness requires clear and convincing evidence that a particular defendant poses an actual danger, not that the defendant in theory poses a danger. *See United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991).

Second, even if the Government satisfies this burden, it must then demonstrate that "no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community."  18 U.S.C. 3142(e)(1).

Here, a rebuttable presumption of detention exists under 18 U.S.C. 3142(e)(3) because the offense charged carries a maximum prison term of ten years of more.  Yet, even when the rebuttable presumption is triggered, the defendant only bears a "limited burden of production."  *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (while the presumption "remains a factor to be considered among those weighed by the district court, at all times, the government retains the ultimate burden of persuasion.").

Mr. Schwab, through counsel, has proposed a robust bond package that assures his appearance at court and the safety of the community.  The standard for assessing the adequacy of these proposed conditions is one of "reasonable assurance" only, as neither the Court nor the

Government may insist on bail conditions that will "guarantee" the defendant's appearance of safety of the community. *See e.g.*, *United States v. Hir*, 517 F.3d 1081, 1092 n.9 (9th Cir. 2008) ("[T]he Bail Reform Act contemplates only the court be able to 'reasonably assure,' rather than guarantee, the safety of the community."); *United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996) ("Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it."); *United States v. Barner*, 743 F.Supp.2d 225, 233 (W.D.N.Y. 2010) (citing *Hir* and *United States v. Tortora*, 922 F.2d 880. 884 (1st Cir. 1990)).

**II.     THE FACTORS FOR CONSIDERATION UNDER THE BAIL REFORM ACT DEMONSTRATE THAT THERE ARE CONDITIONS OF RELEASE THAT WILL REASONABLY ASSURE THE APPEARANCE OF MR. SCHWAB AS REQUIRED AND THE SAFETY OF ANY OTHER PERSON AND THE COMMUNITY.**

The Government seeks review of Judge Vatti's order granting release and asks this Court to detain Mr. Schwab based on risk of flight and danger to the community. *See* Gov't Motion at 1. Judge Vatti carefully weighed the same arguments advanced in the Government's motion and determined that although the Government had established that Mr. Schwab posed a risk of flight and a danger to the community, that the Government had "failed to sustain its burden of showing that there are no conditions or combination of conditions which would reasonably assure his appearance or the safety of the community. Indeed, the Court concludes that the stringent conditions of release imposed sufficiently mitigate these risks and reasonably assure both the defendant's appearance in court as required and the safety of the community." Order, ECF No. 49.

### A.     The Nature and Circumstances of the Offense

The Government's recitation of the nature and circumstances of the offense is founded upon an emotional recitation of the facts alleged against Mr. Schwab, not the facts proven. The Due Process clause of the Fifth Amendment entitles Mr. Schwab to a presumption of innocence. *See United States v. Jackson*, 368 F.3d 59, 65 (2d Cir. 2004). Nevertheless, the allegations, albeit serious,

are only one factor in the analysis required by the Court and given the lack of discovery produced on many of the Government's assertions, they cannot be fully addressed by the defense at this time.

### B.    Weight of the Evidence

It is well-settled that the weight of the evidence is the factor given the *least* weight, and therefore should not be a primary factor for this Court's consideration.  *See e.g.*, *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985); *United States v. Epstein*, 425 F.Supp.3d 306, 321 (S.D.N.Y. 2019).  Indeed, the Government has conceded this point in this District.  *See* Gov't Opposition to Bond Motion, *United States v. Romero-Martinez,* 3:23cr176 (JAM), ECF No. 31 at 7 (Jan. 16, 2024) (conceding that weight of the evidence is "usually afforded the least weight."  The weight of evidence "may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person in the community."  *Motamedi*, 767 F.2d at 1408. "Otherwise, if the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment."  *Id.*

### C.    The History and Characteristics of the Defendant

Mr. Schwab's lack of ties to Connecticut should not deter this Court from affirming Judge Vatti's Order of Release.  If that was a factor counseling against release, any defendant who was from out of district would face hurdles in seeking release that are not contemplated by the Bail Reform Act. Indeed, many courts have held that lack of ties to the prosecuting district is not a factor in release. *See e.g.*, *United States v. Enix*, 209 F.Supp.3d 557 (W.D.N.Y. 2016) (noting that the defendant's strong ties to Florida, coupled with the other relevant factors, warranted release); *United States v. Townsend*, 897 F.2d 989, 955 (9th Cir. 1990) ("we hold that 'community' in this section of the statute embraces both the community in which the charges are brought and also a community in the United States to which a defendant has ties."); *United States v. Garcia*, 801 F.Supp. 258, 263

(S.D. Iowa 1992) ("While the Defendant has no ties to any community within the Southern District of Iowa, he clearly has substantial ties to Tucson, Arizona.").   What is critical is that Mr. Schwab has extensive ties to the Northern of District Georgia, where his proposed third-party custodians reside.  Mr. Schwab did not simply "stay there in the past."  Gov't Motion at 10.  He grew up there, attended school there, and he has immediate and extended family in the area.  As young people do, he left home at one point, and has lived in a variety of places since.  As Judge Vatti noted in his decision granting release,

> [Mr. Schwab] is 22 years old, a U.S. citizen, and has lived in Georgia for most of his life, except for the past two years when he lived in various rentals in Florida, Nevada, and California.  His parents and two of his siblings also live in Georgia.  His prior criminal record is minimal, consisting of a single misdemeanor in 2023 for disorderly conduct for which he paid a fine.  He has a high school diploma, completed one semester of college, and claims that he is self-employed in marketing and cryptocurrency trading.

Order, ECF No. 49.  The love and support of his family is clearly evidenced by the proposal to secure the bond with his family's homes.  His parents, who were thoroughly canvassed by the Court on their roles and responsibilities as third-party custodians and as co-signers to the secured bond, were found by Judge Vatti to be "strong, reliable, and suitable custodians.  They understand and accept the financial risk they have agreed to undertake."  Order, ECF No. 49.

Although the Government contends that Mr. Schwab has been "committing crimes for years," he has no record of being charged for those crimes, evading arrest for those crimes, or fleeing at the possibility for being prosecuted for any crime.  Indeed, Judge Vatti noted the same in his order, finding that "the defendant has not been charged with any such fraud, identify theft or cyber offenses." Order, ECF No. 49.  Although the Government claims that he "has used his skills primarily if not exclusively for fraudulent gain," it is not apparent that it has tried to investigate any

legitimate avenues of self-employment.  The lack of Department of Labor records alone does not corroborate the Government's claim that he has *never* used his skills for legitimate employment.

### D.    Danger to the Community

The Government fails to articulate how computer skills pose more or less of a danger than a defendant who has access to firearms, narcotics, or faces charges for significant crimes of violence. The fact that Mr. Schwab has a skill set that the Government alleges was used in nefarious ways in this case should not preclude Mr. Schwab from being released under the stringent conditions ordered by Judge Vatti.  The Government places much emphasis on his association with others, but defendants in complex, multi-defendant cases involving serious crimes are routinely released on bond.  If the Government has concerns about particular associates, it has the opportunity to identify those individuals and condition Mr. Schwab's release on an order that he have no contact with those individuals.  Indeed, Judge Vatti ordered the Government to produce such a list to the defense, with the understanding that any violation of the order precluding Mr. Schwab from having any contact, directly or indirectly with those individuals, would result in an immediate violation of his conditions, and potentially jeopardize the securities for the bond.

## III.    THE GOVERNMENT HAS FAILED TO MEET ITS BURDEN OF DEMONSTRATING THAT THE PROPOSED CONDITIONS OF RELEASE DO NOT MITIGATE AGAINST ANY RISK OF FLIGHT.

Mr. Schwab submits that he is not a risk of flight.  The fact that he has engaged in international travel and that someone close to him has one family member who lives overseas is not enough to establish that Mr. Schwab is a flight risk.  Yet, accepting Judge Vatti's conclusions regarding the risk of flight, it is clear that the extensive bond package proposed by the defense is more than sufficient to mitigate against any such risk.

The law does not require Mr. Schwab to establish that there is *no* risk of flight for him to be entitled to release pending trial. *See Madoff*, 586 F.Supp.2d at 249 ("The [Bail Reform] Act does not require that the risk be zero, but that conditions imposed 'reasonably assure' appearance."). That is why courts have routinely granted release to defendants where there is a substantial bond proposal that mitigates against any risk of flight. *See e.g. United States v. Esposito*, 309 F.Supp.3d 24, 31 (S.D.N.Y. 2018) (holding that although the defendant "poses some...risk of flight...these risks can be reasonably mitigated by the bail conditions set forth in the Bail Order."); *United States v. Dreier*, 596 F.Supp.2d 831, 833-35 (S.D.N.Y. 2009) (releasing defendant on substantial conditions, including home confinement and a $10 million personal recognizance bond, despite finding "that [the defendant], if released without conditions, would pose a significant flight risk); *United States v. Jones*, 143 F.Supp3d 78, 85, 88-89 (W.D.N.Y. 2015) (setting bail conditions "sufficient to secure Defendant's appearance at subsequent court proceedings," after finding that the defendant, who was extradited to the United States, "has no ties to the United States and no legal status in the United Sates," and "posed a risk of flight."). Indeed, even where a defendant has significant ties or citizenship overseas, that has not deterred courts from releasing the defendant on bond. *See United States v. Steed*, Docket No. 3:25cr48 (KAD) (D. Conn. 2025), ECF No. 42 (releasing defendant on a five million personal recognizance bond, secured by various properties and cash, for a defendant charged with a $28 million dollar fraud with citizenship and significant ties to Argentina); *United States v. Janice*, 1:23cr251 (AKH) (S.D.N.Y. 2023), ECF No. 3, 9 (combining bond, travel restrictions and GPS monitoring for a defendant who was dual citizen of the United States and France and was charged with a fraud of $175 million relating to the sale of her company); *United States v Murphy*, 3:22cr190 (VAB) (D. Conn. 2022) (releasing defendant on bond with travel restrictions and home confinement where defendant fled to Brazil to avoid detection and was

extradited to the United States); *United States v. Flotron*, 3:17cr220 (JAM) (D. Conn. 2017), ECF No. 10 (defendant, who was a citizen of Sweden, was arrested on charges of wire fraud, commodities fraud, and spoofing, was arrested while visiting his girlfriend in the United States, and was released on home confinement and GPS monitoring).

Notably, the defendants in the cases cited above had significant ties to other countries, including citizenship status and residence. That is not the case here. Mr. Schwab has traveled extensively but he has always returned to the United States. Even when he traveled to Indonesia before his arrest, he was aware at that time that the defendants in the related case had been arrested almost five months earlier and charged with serious offenses. Yet, he traveled and returned to Los Angeles, where he was apprehended without incident. The Government's arguments about flight fail to take into account the circumstances of this case and the strength of the bond package that would mitigate against any risk, if such a risk exists.

The government cites several cases in support of its assertion that the possibility of a lengthy sentence increases his risk of flight, *see* Gov't Brief at 11, but notably the Government fails to provide the necessary context for each of the cases it cites in support of that contention—context that provides material distinctions from Mr. Schwab's case.

For instance, the Government cites *United States v. Zhang*, 55 F.4the 141, 151 (2d Cir. 2022) regarding the strength of the evidence against the defendant. *See* Gov't Brief at 11. Yet, the language quoted by the Government—"Where….the evidence against a defendant is strong, it follows that a defendant faces an elevated risk of conviction…, and therefore may present an elevated risk of flight"—is only dicta. *Id.* The case actually concerned whether the District Court erred in denying a Motion to Reopen its judgment ordering detention on the basis that the death

penalty was no longer applicable.[4] *See id.* at 147. The question before the Second Circuit was *not* whether the District Court erred in finding that the defendant was a risk of flight. *Id.* Regardless, however, the potential sentence facing the 32-year-old defendant in *Zhang—a mandatory minimum life sentence* for a murder-for hire conspiracy—is far more severe than what Mr. Schwab faces. *Id.* This is a significant distinction.

The Second Circuit's decision is *United States v. Berkun* is similarly distinguishable. 392 Fed. Appx. 901 (2d Cir. 2010) (cited by the Government at page 11). Critically, the defendant there **was** already awaiting sentencing on a securities fraud conviction when he was arrested <u>again</u> for securities fraud. *Id.* at 903. As such, when the Court stated that "[b]ecause the evidence of guilt is strong, it provides Berkun with an incentive to flee," (*id.*) it did so in large part because the defendant could not "easily dispute his fraudulent intent *in light of his acknowledged past commission of securities fraud.*" *Id.* (emphasis added). Further, at the time of his second arrest, the defendant had been cooperating with the government in his first case and, therefore, his expectation of a "significantly reduced sentence" in that case was "unlikely to be realized." *Id.* The Court further

---

[4] At the time of the initial bond hearing, at which the Magistrate Judge ordered the defendant's release, the defendant was facing the possibility of the death penalty. *Zhang*, 55 F.4th at 145. On the government's appeal to the District Court, the Court stated that it did not consider the possibility of the death penalty when it reversed the Magistrate Judge's opinion because the death penalty was not being pursued as a matter of course in any case. *See id.* Once the government officially declined to pursue the death penalty in this case, the defendant filed a Motion to Reopen, arguing that was a material change in circumstance that warranted a new hearing. *Id.* The District Court denied the motion, and the defendant appealed. *Id.* at 146. Accordingly, the only issue on appeal was whether the District Court erred in denying the Motion to Reopen, *not* whether it erred in ordering detention. *Id.* at 147. In further dicta, the Second Circuit highlighted the District Court's additional findings regarding risk of flight that are distinguishable here: the defendant's "close family ties to China and Taiwan"; the "modest incomes" of the sureties; and that the bond package held "insufficient moral suasion" over the defendant. *Zhang*, 55 F.4th at 151.

highlighted the defendant's "record of deceiving the court" in determining that the District Court had not committed clear error in detaining the defendant. *Id*. at 903-04. Accordingly, the defendant in *Berkun* was facing two substantial sentences and had little ground to stand on to challenge the evidence against him in the operative case. This is a remarkable distinction from Mr. Schwab. Similar distinctions can be made in the other cases cited by Government, thereby highlighting the distinctions between cases where detention was ordered and cases like Mr. Schwab's, which should result in release. *See e.g.*, *United States v. Khusanov*, 731 Fed. Appx. 19, 20 (2d Cir. 2018) (the defendant was charged with conspiring and attempting to provide material support to a foreign terrorist organization—namely, ISIS); *United States v. Bruno*, 89 F. Supp. 425, 428, 431 (E.D.N.Y. 2015) (defendant with an extensive criminal history, who was charged with fifteen counts, including two counts of murder, causing death through use of a firearm, and conspiracy to commit murder for his alleged role in the Gambino crime family of La Cosa Nostra, was denied bond).

Accordingly, the cases cited by the government do not support a finding in Mr. Schwab's case that the weight of the evidence against him and the potential sentence he faces heightens his risk of flight.

## IV. THE GOVERNMENT HAS FAILED TO MEET ITS BURDEN BY CLEAR AND CONVINCING EVIDENCE THAT THE PROPOSED CONDITIONS FAIL TO ASSURE THE SAFETY OF THE COMMUNITY.

Mr. Schwab respectfully disagrees that there is clear and convincing evidence that he is a danger to the safety of the community. Yet, even with that finding, the Government has not sustained its burden that the proposed conditions are more than adequate to mitigate any such risk. Although the Government acknowledges that the proposed security of $1.5 million (secured by his parents' homes) is significant, it asserts without elaboration that his situation "is not like most other defendants." Gov't Memo at 12. The Government's focus appears to be on his access to resources,

but this has not deterred courts from granting release when defendants have both extensive financial resources and strong ties to other countries.

First, the Government suggests that it would be easy to cover any loss if the bond secured by his family's homes were forfeited. Yet, Mr. Schwab cannot generate or access financial resources in the manner described by the Government without access to devices and the internet, and Judge Vatti's conditions specifically addressed that concern by restricting his access to internet capable devices. Second, the Government suggests that he could cut off his location monitoring device and flee, yet that suggestion (which exists in every case where a defendant is placed on electronic monitoring) fails to account for Judge Vatti's proposed conditions. If Mr. Schwab did cut off his monitoring device and attempted to flee, he would violate the perimeter that Judge Vatti ordered to be created around the family home and other points of departure (i.e., airport, bus station), and as a result the United States Probation Office would be immediately notified the instant Mr. Schwab stepped outside those boundaries. Third, the Government raises concerns with third-party custodians because they are his parents, when in fact his parents are ideal sureties and custodians. If he violates the conditions of release, the parents who have supported him and love him would lose two homes. Although they are undoubtedly supportive of their son, they made clear during Judge Vatti's canvas that they understood their obligations as custodians and would not hesitate to alert the United States Probation Office to any violation by Mr. Schwab.

The Government has not articulated why Mr. Schwab is so different than the legions of defendant who appear before these courts—particularly young defendants without significant criminal records—and are released pending trial. By contrast, the only case cited by the Government in its argument about dangerousness—*United States v. Benitez-Elvira*, 2014 WL 6896142, at *3 (M.D.N.C. Dec. 5, 2014)—is a case focused on risk of flight that presents an entirely different set

of circumstances.  In that instance, the defendant had already pled guilty, he was not a United States citizen, he had entered the country illegally, he had family ties to Mexico and frequently traveled between the two countries using fake passports, and he had no close ties to anyone with legal status in the United States.  *Id.*  Furthermore, his proposed custodian was not always home and could not closely monitor the defendant.  *Id.*

Mr. Schwab *is* the usual defendant who is worthy of the opportunity for release and to demonstrate to this Court his ability to comply with the Court's orders.  His proposed custodians are home (one is retired and one works at home).  Judge Vatti ordered that one remain with him at all times.  They are well-versed in the allegations against their son after nearly three hours of detention hearings, and they are on notice of their obligations and the steep repercussions of Mr. Schwab's misconduct or their failure to remain vigilant.

Perhaps a more comparable case, one that is undoubtedly well-known to many, is the case of Samuel Bankman-Fried, who was charged with one of the largest financial frauds in history amounting to the misappropriation of billions of dollars of customer money, defrauding investors and lenders, and engaging in campaign finance violations.  *See United States v. Samuel Bankman-Fried*, 1:22cr673 (LAK) (S.D.N.Y.), Transcript of Arraignment, Doc. 36 at 6-7.  The evidence against him was very strong, and he undoubtedly had access to extraordinary financial resources that could have enabled him to flee.  In fact, he was arrested in the Bahamas.  *Id.* At the arraignment, the Government stated, "[i]f the test for whether or not the defendant should be detained was simply the seriousness of the offense and the weight of the evidence, detention would likely be appropriate in this case.  But as your Honor knows, there are other factors and considerations."  *Id.* at 7.  Since Mr. Bankman-Fried consented to extradition after his arrest, the Government did not contest his release under the stringent conditions imposed by the Court given his lack of history of flight, his

family and community ties in California, and his consent to extradition. *Id.* Although his personal assets were no longer in the billions, he still had the resources available to post a $250 million personal recognizance bond.

It is unclear how Mr. Schwab's case is so different from that of Mr. Bankman-Fried. Certainly, the allegations here are serious and involve a conspiracy to commit kidnapping, but there is no allegation that Mr. Schwab was directly involved in the incident or ever set foot in Connecticut. Although the Government continues to try to paint Mr. Schwab as the orchestrator of this event, it Mr. Schwab was not the "mastermind." Considering the broader landscape of cases, the Government cannot establish that the proposed bond package fails to address their concerns about Mr. Schwab, as courts in this Circuit and beyond have released defendants who have engaged directly in violent crime.Even in a case where the allegations are serious, the severity of the claims have not prohibited courts in this Circuit from granting release where, as here, there are conditions that mitigate in its favor. *See e.g. United States v. Fox*, 602 F.Supp.3d 434 (W.D.N.Y. 2022), *aff'd* 2022 WL 2564600 (2d Cir. 2022) (granting release to a defendant charged with serious drug, weapon, and sex-trafficking offenses, noting that despite the "deeply disturbing" allegations, release was warranted); *United States v. Enix*, 209 F.Supp.3d 557, 564-65 (W.D.N.Y. 2016) (ordering release on conditions where the defendant was charged with a RICO conspiracy involving murder, kidnapping, robbery, drug trafficking, and obstruction of justice as its predicate acts); *United States v. Mattis*, 963 F.3d 285, 296 (2d Cir. 2020) (affirming release on $250,000 bond and home detention where the defendants were charged with throwing a Molotov cocktail into a police vehicle).

While it remains to be seen whether Mr. Schwab will ultimately be convicted at trial of the crimes charged, it is not the Court's role at this stage of the proceedings to assess his guilt or innocence. *United States v. Jones*, 566 F.Supp.2d 288, 292 (S.D.N.Y.2008) ("the Court's function

in examining the weight of the evidence is not to determine guilt or innocence."). The Court must weigh all factors in its analysis to determine the propriety of detention, and the severity of the charged offense alone should not dictate the outcome of the motion seeking release. *See e.g. Fox*, 602 F.Supp.3d at 434.

Mr. Schwab and his family have everything to lose by his noncompliance with the conditions imposed or by any effort to evade responsibility for this case. He has been aware of this investigation at least since August 2024 when the defendants in the related case were arrested, yet he did not engage in any action to flee from this country. Mr. Schwab does not get credit for consenting to extradition because he did not create that issue for the Government. He returned home from a vacation, passed through customs, and when the FBI was waiting for him, he was cooperative in his arrest. He did not contest identity at his initial appearance in California, and spent several weeks in detention centers across the country awaiting his opportunity to seek release in Connecticut.

The conditions proposed more than satisfy the concerns of the Government and the dictates of the Bail Reform Act. Accordingly, Mr. Schwab respectfully asks this Court to deny the Government's motion and release him consistent with Judge Vatti's order of May 14, 2025.

THE DEFENDANT,
James Schwab

Dated: May 22, 2025                     /s/ Allison M. Near
                                                Allison M. Near
Emily Kaas-Mansfield
Jacobs & Dow, LLC
350 Orange Street
New Haven, CT 06511
Phone: (203) 772-3100
Bar No.: ct27241
Email: anear@jacobslaw.com
       ekaas@jacobslaw.com


Michael Y. Cristalli
Austin V. Barnum
Clark Hill PLC
1700 S. Pavilion Center Drive, Ste. 500
Las Vegas, NV 89135
Email: mcristalli@clarkhill.com
       abarnum@clarkhill.com

<u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that on May 22, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                     /s/ Allison M. Near
                     Allison M. Near