UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 3:25-CR-30 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES SCHWAB, | ) | |
| *Defendant*. | ) | June 25, 2025 |

**RULING ON THE GOVERNMENT'S MOTION TO REVOKE ORDER SETTING CONDITIONS OF RELEASE**

Sarala V. Nagala, United States District Judge.

Defendant James Schwab has been indicted on one count of conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c). *See* Indictment, ECF No. 7. After two bond hearings, United States Magistrate Judge Vatti entered an order setting conditions of release and staying the release order pending the Government's appeal. *See* Order, ECF No. 49. The Government timely filed a motion to revoke the release order and requested that Schwab be detained pending trial. *See* Mot. to Revoke Order Setting Conditions of Release, ECF No. 48. The undersigned held two oral arguments on the motion. After careful consideration, and with acknowledgment that this case poses a close question, the Court DENIES the Government's motion based on its finding that conditions exist that will reasonably assure Schwab's appearance at trial and the safety of the community.

**I.     FACTUAL BACKGROUND**

Schwab is a twenty-two-year-old United States citizen, who grew up in Georgia. ECF No. 48 at 10; Def.'s Opp. Br., ECF No. 61 at 10. In the last few years, he has lived in several states, including Florida, Nevada, Texas, and California. *See* ECF No. 48 at 10; ECF No. 61 at 10. His parents still reside in Georgia, as do two of his siblings. ECF No. 61 at 10. Schwab has minimal

criminal history, having been previously charged only with misdemeanor disorderly conduct, for which he paid a fine. ECF No. 61 at 10. He has a high school diploma, completed one semester of college, and asserts that he is self-employed in marketing and cryptocurrency trading, although no verification of this alleged employment has been provided. *Id.* at 10–11. He has traveled internationally, including to Indonesia, Qatar, Saudi Arabia, and the United Arab Emirates—all countries without extradition treaties with the United States. ECF No. 48 at 5. The Government also contends that Schwab has access to substantial assets, which is corroborated by Defendant's own financial affidavit showing that he has approximately $500,000 in assets, $400,000 of which is held in cryptocurrency. *See id.* at 4–5; CJA Financial Affidavit, ECF No. 62 (sealed).

On February 25, 2025, a federal grand jury indicted Schwab on one count of conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c). *See* ECF No. 7. The undersigned is familiar with the specifics of the associated kidnapping, as that criminal case is also pending on her docket. *See United States v. Borrero*, No. 24-CR-186 (SVN) (charging six individuals in an indictment dated September 24, 2024). The kidnapping occurred on August 25, 2024, and involved a group of six individuals traveling from Miami, Florida, to Danbury, Connecticut, for the sole purpose of violently kidnapping two victims for ransom. *See* ECF No. 48 at 1–3. The kidnapping victims were forcibly carjacked, dragged into a van, duct taped, and beaten with baseball bats. *Id.* at 1. Five of the six defendants charged in the *Borrero* matter have pleaded guilty. *See* Plea Agreements, *Borrero*, No. 24-CR-186 (SVN), ECF Nos. 50, 55, 59, 68, 75.

The Government asserts that Schwab hired the individuals charged in the *Borrero* matter to kidnap the victims so that Schwab could "extort millions in cryptocurrency and assets" from the victims' son. ECF No. 48 at 2. Based on the Government's allegations, Schwab's involvement appears to be a but-for cause of the Miami group coming to Connecticut to commit the kidnapping.

*Id.* at 2–3. That is, based on the Government's allegations, there are no facts to suggest that they would have come to Connecticut or carried out the kidnapping independently, without Schwab engaging them for and funding this enterprise. *Id.* Additionally, although he is not presently charged with other crimes, the Government asserts that Schwab has "been committing crimes for years" and had previously solicited another group to kidnap the victims, fraudulently obtained access to credit cards and airline accounts of other individuals, engaged in identity theft, and possessed fraudulent identification documents under false aliases. *See* ECF No. 48 at 3–5; Gov't Reply, ECF No. 64 at 2.

Schwab was arrested on January 29, 2025, in Los Angeles, California after a warrant was issued in relation to the conspiracy to commit kidnaping charge. *See* Executed Arrest Warrant, ECF No. 16. He was arrested at the airport upon his return to the United States from a trip to Indonesia. ECF No. 61 at 13. Upon his arrest, the Government recovered a laptop, an Android phone, and two Apple iPhones. ECF No. 48 at 5. The Government represents that the laptop was protected by two passwords, and the iPhones each had passcodes consisting of more than 20 digits. *Id.* Further, the Government asserts the Android phone contained only the Signal application[1] and a Virtual Private Network ("VPN"), and the messages on the Signal application were set to delete hourly. *Id.* The Government asserts that electronic devices are "tools of his trade" that Schwab relies upon to engage in fraud and solicit others to engage in violence. *Id.*

The Government has not yet recovered the device(s) used to send the messages associated with the kidnapping, though it has been able to search, in limited respects, an iCloud account it claims is associated with the phone Schwab used to coordinate the kidnaping. Gov't Reply to

---

[1] Signal touts itself as an app with "[s]tate-of-the-art end-to-end encryption" for "[e]very message, every call, every time." *See* signal.org (last visited June 25, 2025). Its website further states: "We can't read your messages or listen to your calls, and no one else can either." *Id.*

3

Status Rep., ECF No. 70.  The Government claims Schwab encrypted the iCloud account after the kidnaping scheme went awry, and told an associate he did so to avoid detection by law enforcement.  ECF No. 48 at 3.  Within that iCloud account, investigators have found evidence of sixteen cryptocurrency applications.  ECF No. 70 at 1–2.  They also located a photograph the Government asserts was sent by Schwab to one of the kidnappers, depicting an Apple laptop and a Trezor device,[2] along with the Trezor device's packaging.  *Id.* at 2–3.  The Government has not provided the date of the photograph.  Neither the Apple laptop nor the Trezor device depicted in the photograph have been recovered by the Government.  *Id.* at 3.

## II.     PROCEDURAL BACKGROUND

Schwab was detained following his arrest in California and transported to Central Falls, Rhode Island, to be detained at Wyatt Detention Center.  *See* Rule 5 Docs., ECF No. 5 (sealed). On March 12, 2025, the Government filed a motion for pretrial detention, which Judge Vatti granted.  *See* ECF No. 12.  On May 2, 2025, Schwab filed a motion for release from custody.  ECF No. 40.  Following two bond hearings, Judge Vatti issued an order setting stringent conditions of release, though he stayed the release order pending any appeal from the Government.  Text Order, ECF No. 49.  Judge Vatti concluded that while the Government "ha[d] demonstrated that the defendant poses a risk of flight by a preponderance of the evidence and that the defendant poses a danger to the safety of other persons or the community by clear and convincing evidence, the Court also finds that that government has failed to sustain its burden of showing that there are no conditions or combination of conditions which would reasonably assure his appearance or the safety of the community."  *Id.*  Judge Vatti set the following conditions of release:

1)   Defendant must not violate federal, state or local law while on release;

---

[2] According to the Trezor website, "Trezor is a physical device that protects your crypto from online hacks, malware & unauthorized access."  *See* trezor.io (last visited June 25, 2025).

4

2) Defendant must cooperate in the collection of a DNA sample if authorized by 24 U.S.C. § 40;
3) Defendant must advise the Court or his pretrial services office or supervising officer in writing before changing his residence or telephone number;
4) Defendant must appear in the District of Connecticut as required;
5) "Defendant shall sign an appearance bond in the amount of $1,500,000 to be co-signed by his parents, Kevin Schwab and Laura Schwab and to be secured by real estate owned by his parents at [redacted address] and [redacted address] and $25,000 deposited with the Court," both of which are subject to forfeiture if Defendant fails to appear as required or commits a federal, state, or local crime while on release;
6) Defendant will be placed in the custody of Kevin Schwab and Laura Schwab and shall reside with them;
7) Defendant must submit to supervision by the U.S. Probation Office;
8) Defendant must not obtain a passport or other international travel document and must surrender his passport;[3]
9) Defendant is restricted to Georgia and may travel to Connecticut for court appearances and attorney visits only;
10) Defendant must avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including individuals identified by the Government by May 20, 2025;
11) Defendant must get medical or psychiatric treatment as deemed necessary by Probation;
12) Defendant must not possess a firearm, destructive device, or other weapon;
13) Defendant must not use alcohol excessively or use or unlawfully possess a narcotic drug or other control substance unless prescribed by a medical practitioner;
14) Defendant must submit to drug testing if requested to do so by his pretrial service officer;
15) Defendant will be restricted to home incarceration—*i.e.*, "24-hour-a-day lock-down at [his] residence except for medical necessities and court activities or other activities specifically approved by the court";
16) Defendant will be monitored by location monitoring technology;
17) Defendant shall report as soon as possible to the pretrial services or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops;
18) Defendant shall not have access to any Internet-capable devices, with the exception that he may watch television on a Smart TV provided that he cannot use it to access the Internet;
19) Defendants' parents' laptops must be password protected and his parents must not share the password with Defendant;
20) Any iPhones/iPads in the Defendant's parents' home shall be password and biometrically protected from any access by Defendant;
21) At least one of Defendant's parents, as his custodians, must be present in the home at all times to supervise Defendant;
22) Probation shall designate Defendant as high risk so that any attempt to remove location monitoring device, leave the State of Georgia or enter exclusion zones triggers an immediate alert; exclusion zones shall be placed around any airport within 100 miles of defendant's proposed residence; and

---

[3] The Court understands that Defendant has already surrendered his passport to the FBI.  *See* ECF No. 49.

5

23) Defendant shall submit a CJA Form 23 financial affidavit under seal by May 20, 2025. ECF No. 49.

The Government timely filed a motion to revoke Judge Vatti's order. *See* ECF No. 48. As part of its briefing, the Government provided this Court three new pieces of evidence discovered as part of the ongoing investigation that Judge Vatti did not have before him when he issued his ruling. First, the Government provided evidence that in March of 2025, Schwab passed word through an intermediary that a potential Government witness, who was incarcerated at a different facility, was "the boys," which the Government interprets as "working with law enforcement." *See* ECF No. 64 at 5. The Government has since taken steps to protect that individual. *Id.* Second, the Government identified a text exchange from July of 2024 with Mr. Diaz[4] about harming the victims' son, including an offer to "fund it if any expenses needed afterwards." *See id.* at 2. Third, the Government produced another text exchange from September of 2024 that came to light between the May 28, 2025, bond hearing and the June 20, 2025, bond hearing that suggested Schwab had engaged yet another person to try to kill the victims' son. *See* Gov't Reply, ECF No. 70 at 4.

In the course of the hearings before the undersigned and in response to an order by the undersigned, Schwab's counsel explored whether Schwab could access any of the $400,000 in cryptocurrency he disclosed as belonging to him in his initial bail report in California, in an effort to understand whether those funds could be secured in some manner that would render them inaccessible to Schwab if he were to be released. *See* Order, ECF No. 66. After requesting an extension of time to report to the Court on that issue, defense counsel concluded that there were

---

[4] Although the Government does not identify Mr. Diaz by his full name, *see* ECF No. 64 at 2, the Court believes it is referring to Reynaldo Diaz, who is a defendant in the kidnapping case before the undersigned, *see* No. 3:24-CR-186 (SVN).

"significant logistical hurdles" to accessing any cryptocurrency, and that, were Schwab to attempt to access that cryptocurrency, there may be potential incursions into his Fifth and Fourth Amendment rights. Def.'s Status Rep., ECF No. 69. Schwab therefore requested that the Court address the bond package that had previously been proposed to and approved by Judge Vatti, were he to be released. *See id.*

### III.    LEGAL STANDARD

This Court may review a magistrate judge's release order under 18 U.S.C. § 3145(a). In assessing a motion to revoke an order setting conditions of release, the district court should "fully reconsider" the magistrate judge's ruling and reach an "independent conclusion," rather than deferring to the judgment of the magistrate judge. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) (citing earlier version of § 3145). As part of its *de novo* review, the Court may "rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." *United States v. Marra*, 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001) (citing *United States v. Colombo*, 777 F.2d 96, 100 n.1 (2d Cir. 1985)). While the rules of evidence do not apply to a detention hearing and the Government may support its arguments by proffer, the Court retains responsibility for assessing the reliability and accuracy of information presented by the Government. *See United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995); *United States v. Enix*, 209 F. Supp. 3d 557, 573 (W.D.N.Y. 2016).

Under the Bail Reform Act, a defendant must be released pending trial unless no set of conditions can reasonably assure his appearance as required or the safety of any other person or the community. 18 U.S.C. § 3142(e). "Because the law . . . generally favors bail release," the Government carries "dual burden[s]" in seeking pretrial detention. *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). "As to risk of flight, the government bears the burden of proving by

preponderance of the evidence both the risk of flight, and that no condition or combination of conditions would reasonably assure [the defendant's] appearance." *United States v. Nezhinskiy*, No. 25-346, 2025 WL 1005167, at *1 (2d Cir. Apr. 1, 2025) (summary order) (citing *Sabhnani*, 493 F.3d at 75). "As to the risk of danger to the community, the government must show by clear and convincing evidence that 'no condition or combination of conditions will reasonably assure the safety of the community.'" *Nezhinskiy*, 2025 WL 1005167, at *1 (quoting *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995)). "Under this statutory scheme, 'it is only a limited group of offenders who should be denied bail pending trial.'" *Sabhnani*, 493 F.3d at 75 (quoting *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987)).

In determining whether the Government has met its respective burdens, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger that would be posed by the defendant's release. 28 U.S.C. § 3142(g). The weight afforded to each of these factors varies by case and requires the Court to undertake a fact-specific inquiry. *United States v. Zhang*, 55 F.4th 141, 144, 149–50 (2d Cir. 2022).

## IV.     DISCUSSION

Although this case poses a close question, the Court finds that although the Government has proven Schwab is a flight risk by a preponderance of the evidence, it ultimately has failed to satisfy its burdens of proving that no conditions of release will reasonably assure Schwab's appearance in Court (by a preponderance of the evidence) and the safety of others or the community (by clear and convincing evidence) if he is released. The Government's motion to revoke Judge Vatti's order setting conditions of release is therefore DENIED.

The Court begins by acknowledging that the charge in this case—conspiracy to commit kidnapping—is very serious. If convicted, Schwab faces a possible sentence of life imprisonment. The seriousness of this charge is underscored by the violence associated with the kidnapping Schwab allegedly conspired to commit, in which two victims were carjacked, beaten, and kidnapped with an intent to be held for ransom. The Government alleges that Schwab orchestrated this kidnapping to procure significant personal financial benefit. Additionally, without prejudging guilt and acknowledging that the Government's investigation is ongoing, the Court notes that the Government has presented strong evidence against Schwab. Accordingly, these factors weigh in favor of pretrial detention.

Nonetheless, after consideration of Schwab's history and characteristics and the danger that would be posed if he were released, the Court finds that the Government has not shown that no set of proposed conditions could *reasonably assure* Schwab's appearance for required court proceedings or the safety of the community if he were released pending trial. Schwab has minimal criminal history—only one misdemeanor for which he paid a fine. The Government alleges that a significant portion of any safety risk posed by Schwab, should he be released, stems from his alleged repeated engagement in violence by proxy. These include allegations that Schwab hired the kidnappers in this case, that he sought to hire a separate group of individuals to kidnap the victims, that he sought to hire two separate individuals to harm and/or murder the victims' son, and that while in custody, he identified an incarcerated potential Government witness to a third party, putting the purported witness at risk.

But under the proposed conditions, Schwab would not have contact with anyone other than his family members, would not be able to leave his parents' home in rural Georgia, would not have access to any Internet-capable device, and would be subject to location monitoring with exclusion

zones around airports. Further, one of his parents, as his proposed custodians, would be required to always be in the home to supervise him, and both parents would need to password- and biometrically-protect any Apple iPhones/iPads or other cellular devices and password-protect their personal laptops, with the passwords not to be shared with Schwab. On the record at the May 28, 2025, bond hearing, Schwab's parents confirmed that they do not have a landline telephone, further supporting that Schwab will have very limited access to any third parties.[5] Arguments that Schwab would still be able to engage in violence by proxy, absent any communication mechanism with people outside his family, extend beyond the reasonable assurance standard. Indeed, it appears that Schwab will have less contact with third parties in home incarceration at his parents' home than he would if he remained incarcerated at Wyatt. Thus, the conditions of release likely decrease Schwab's ability to engage in violence by proxy in advance of trial—provided that Schwab complies with them. On that score, the Court emphasizes that it is placing significant trust in Schwab's parents, as his proposed custodians, to monitor his compliance with the conditions imposed by the Court.

Similarly, the Court is persuaded that the conditions proposed will reasonably assure Schwab's appearance at future court proceedings. While it is true that Schwab has traveled extensively, he has never permanently resided in another country; nor has the Government

---

[5] As Schwab will not be permitted access to any device capable of accessing the Internet (except a Smart TV to watch television only), the Court assumes counsel will communicate with Schwab via a telephone that does not have Internet access. If counsel believes the conditions of release will need to accommodate use of a landline telephone for this purpose, counsel may file a notice before the hearing discussed below, requesting that the Order Setting Conditions of Release allow for installation of a landline telephone and use of the landline telephone by Schwab for legal consultations only. Should telephone-only consultations be insufficient as the case progresses toward trial, Schwab may file a motion to modify the conditions of release, provided that he proposes conditions to facilitate attorney-client communications that will not allow him access to a device that connects to the Internet.

produced evidence of ties to a foreign country beyond his travel.[6]  Additionally, he voluntarily returned to the United States from Indonesia in January of 2025, after knowing about issuance of the September 2024 indictment in the *Borrero* case.  And he has turned over his passport to the Government.

Of course, the Court understands that Schwab has an incentive to flee, given that he faces a possible penalty of up to life in prison if convicted, and that a person can flee and hide within the United States.  The multiple unseized false identification documents the Government alleges Schwab has do concern the Court.  When coupled Schwab's significant financial assets held in the form of cryptocurrency, this concern is heightened.

But again, the stringent restrictions that the bond conditions place on Schwab's ability to communicate with individuals beyond his family or access the Internet in any way sufficiently mitigate his flight risk, to the level of reasonable assurance that he will appear for court proceedings.  Without Internet access, the ability to contact individuals beyond his family, or the ability to leave his parents' home, Schwab is significantly less likely to be able to access his cryptocurrency assets or use false identification documents.  And the consequences for his family were he to violate his conditions of release are severe:  his parents would lose both of their homes, which have been pledged as collateral for his $1,500,000 bond, and an additional $25,000 pledged in cash.

Finally, the Court acknowledges that Schwab is technologically savvy.  The technology recovered by the Government was encrypted and protected by highly complex passwords.  Schwab

---

[6] At the June 20, 2025, bond hearing, the Government suggested that Schwab had ties to Dubai, based on the transcript of a prison call between Schwab and his parents.  During the phone call, Schwab's father had asked whether a friend in Dubai was able to help Schwab.  Schwab contended at the hearing that the person in Dubai was a United States citizen visiting Dubai temporarily.  On the present record, the Court is unable to find that the person in Dubai actually represents a foreign tie to Schwab.  Nor does the fact that Schwab's girlfriend's father resides in Indonesia suggest significant foreign ties to warrant pretrial detention, given that Schwab's passport has been surrendered and he cannot, under the proposed conditions, obtain a new one.

also holds significant assets in cryptocurrency. Protecting these assets requires a high level of technological prowess. On the record at the May 28, 2025, bond hearing, Schwab's parents, recognizing that Schwab is technologically savvy, volunteered to add additional conditions to the bond package, including restricting access to their home to only family members and ensuring that no one entering their home brings a device capable of connecting to the Internet. They did so to allay concerns that Schwab may gain access to such a device via a third party.

With respect to the potential Trezor device that the Government has not recovered, the Court understands that it is possible a third party could access the funds stored on that device, if provided certain information by Schwab. But given that the date of the photograph allegedly depicting the Trezor device has not been provided, it is not clear that it was recently taken; nor is it clear that the Trezor device presently stores any cryptocurrency at all. And without means to use the Internet or contact any third parties aside from the postal service, the concern that Schwab could gain access to any potential funds stored on the device through a third party is significantly reduced. To further protect against this (somewhat remote) harm, though, the Court will impose a condition that Schwab not be permitted to mail any letter through the postal service or any other means of mail.

The Government also correctly points out that, were Schwab to remove his location monitoring bracelet, he could flee. This concern is present for any defendant as to whom location monitoring is imposed. Here, given that such actions by Schwab would render his parents homeless, the Court finds that the stringent conditions proposed will *reasonably assure* Schwab's appearance at future court proceedings. Although the Government is correct that detention would *certainly assure* Schwab's presence for court proceedings, certainty is not required by statute; only reasonable assurance is. *See* 18 U.S.C. § 3142(e).

In light of the Government's (and the Court's) concerns, however, the Court will adopt the additional conditions described in this ruling. The Court finds these additional conditions further limit possible avenues for Schwab to endanger the safety of other persons or obtain access to financial resources or false identification documents that may permit him to flee. When combined with the already stringent restrictions on technological devices in the home, the Court finds such conditions adequate to reasonably assure Schwab's appearance in Court and the safety of the community.

The Court also believes it is appropriate to take the further step of allowing the bond and collateral to be forfeited if Schwab fails to appear in Court as required or violates *any* condition of release, which Schwab agreed to on the record at the May 28, 2025, hearing. This will provide the Court with added assurance that Schwab's parents will thoroughly supervise his compliance with the conditions, lest they risk losing their homes and significant cash posted as bond. To be clear, this condition goes beyond Judge Vatti's condition that the bond and collateral would be forfeited only if Schwab fails to appear or commits a federal, state, or local crime while on release.

## V. CONCLUSION

For the reasons described herein, the Government's motion to revoke Judge Vatti's Order Setting Conditions of Release is DENIED.

After the paperwork has been completed by Schwab's parents to secure their properties and the $25,000 in cash collateral has been deposited with the Court, Schwab shall notify the Court, through counsel, by filing notice on the docket. The Court will then set a hearing date, in consultation with the parties, for which Schwab shall be transported from Wyatt Detention Center to the U.S. District Court for the District of Connecticut in Hartford, by the United States Marshals Service. At this hearing, the Court will issue the new Order Setting Conditions of Release, and

Schwab and his parents will execute the bond paperwork. Following the hearing, Probation will install the required GPS bracelet prior to Schwab's departure to Georgia. Schwab's parents must travel to Connecticut for this hearing so that he may be transferred to their custody. His parents must travel with him directly back to their home in Georgia, where he shall remain in home incarceration, subject to the conditions in the Court's release order, pending trial.

The Court further notes that, should additional hearings be required in this matter prior to trial, Schwab will be required to appear in person in Connecticut, and at least one of his parents will be required to travel with him for any Court appearance, to continually monitor compliance with his conditions of release.

**SO ORDERED** at Hartford, Connecticut, this 25th day of June, 2025.

                                     */s/ Sarala V. Nagala*
                                    SARALA V. NAGALA
                                    UNITED STATES DISTRICT JUDGE